**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Krystal Energy Co. Inc., | ) CV 12-00079-PHX-FJM |
| | ) CV 12-00282-PHX-FJM |
| Plaintiff, | ) BK 01-00166-GBN |
| | ) AP 01-00171-GBN |
| vs. | ) |
| | ) **ORDER** |
| The Navajo Nation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

The court has before it the bankruptcy judge's proposed findings of fact and conclusions of law and recommendation for issuance of a final judgment and order (doc. 1), defendant's objections (doc. 11), plaintiff's response (doc. 13), and defendant's reply (doc. 9).[1] Plaintiff filed an appendix containing the transcript of the bankruptcy court's damages hearing, selected exhibits, and related bankruptcy court rulings (doc. 15). We also have before us defendant's objections to the bankruptcy court's award of attorneys' fees and costs to plaintiff (doc. 12), plaintiff's response (doc. 14), and defendant's reply (doc. 16).

**I**

This adversary proceeding concerns two oil well sites located on Navajo tribal land

---

[1] Rule 9033(b), Fed. R. Bankr. P. does not contemplate the filing of a reply in support of a party's objections. Defendant also moves for *de novo* review. For the reasons discussed below, this motion is unnecessary. We are already required to conduct a *de novo* review of the bankruptcy judge's proposed findings. Fed. R. Bankr. P. 9033(d).

near Farmington, New Mexico ("the New Mexico site") and Aneth, Utah ("the Utah site"). Amoco leased the land and granted Cross Creek operating rights.[2] In 1997, plaintiff met with Amoco, the Bureau of Indian Affairs ("BIA"), and defendant regarding Amoco's proposed transfer of operating rights from Cross Creek to plaintiff. Plaintiff paid Cross Creek approximately $400,000 for operating rights to both sites, took possession, and began operations in May 1997. The formal application for approval of the assignment was submitted.

Plaintiff's operation of both sites continued without incident until 1999. That spring, the FBI seized plaintiff's business records as part of an investigation into alleged non-payment of taxes by other business entities owned by plaintiff's owners.[3] Plaintiff was informed by the BIA on December 8, 1999 that assignment of the leases had been rejected by defendant. Amoco was instructed to immediately take over operation of the leases. Later that month, Navajo officials arrived at the Utah site. They evicted plaintiff's employee, emptied storage tanks containing oil, locked the gate, and told plaintiff's employee he could not return. The New Mexico site was also locked.

Plaintiff filed for bankruptcy in the United States Bankruptcy Court for the District of Arizona in January 2001. Soon after, plaintiff filed an adversary proceeding against defendant. In 2004, the Ninth Circuit held that Congress expressly abrogated the sovereign immunity of Indian tribes in 11 U.S.C. § 106(a), permitting this action to proceed. See Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1061 (9th Cir. 2004). In January 2008, the bankruptcy judge granted partial summary judgment to plaintiff on the turnover of property claim and reserved ruling on the remaining claim for violation of the automatic stay.

---

[2] For a complete description of the facts and procedural history relating to the turnover claim, see In re Krystal Energy Co., Inc., CV-08-178-PHX-MHM, 2008 WL 4446703 (D. Ariz. Sept. 30, 2008).

[3] Plaintiff's vice-president, Bruce Nicholson, pled guilty to federal charges and spent two years in prison. Despite plaintiff's attempts, it has been unable to recover the seized business documents.

Defendant filed an interlocutory appeal of the ruling, which this district affirmed. See In re Krystal Energy, 2008 WL 4446703, at *7.

The bankruptcy judge held an evidentiary hearing on damages on June 27, 2011 (doc. 15, ex. C). Plaintiff presented four witnesses. Jonny Bennett Jr., an oil and gas inspector, testified about the equipment he recalls seeing when performing inspections at the Utah and New Mexico sites. Carl Padilla, an oil equipment manufacturer, testified about his memory of the Utah site and his valuation of the equipment at both sites. George Cunningham, a certified appraiser, testified concerning his valuation of the property at both sites as of 1999, which he calculated to be $4,250,000. Finally, Bruce Nicholson, plaintiff's vice president, testified concerning the events leading up to plaintiff's ejection from the sites. Defendant presented Donald Ross, a certified appraiser, as its sole witness. Ross calculated the forced liquidation value in 2008 of the equipment at the New Mexico site as $8,300. Each witness was cross-examined and a number of exhibits were admitted. The parties submitted post-trial briefs.[4]

On January 6, 2012, the bankruptcy judge issued his proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1). After an extensive discussion of the evidence presented at the hearing and the history of this action, the bankruptcy judge concluded that Cunningham's appraisal was "far more valuable in establishing the value for the operating assets as existing in place during December of 1999" than Ross's appraisal. Proposed Findings at 18. However, due to the uncertainty associated with the need to hypothetically appraise property at the Utah site, the bankruptcy judge reduced Cunningham's appraisal by $250,000 and recommended that we enter a final judgment in favor of plaintiff and against defendant in the amount of $4,000,000. In addition, he noted that plaintiff may apply to the bankruptcy court for an award of attorneys' fees.

Plaintiff filed its motion for attorneys' fees (doc. 15, ex. H), to which defendant

---

[4] A time to present closing arguments was scheduled at the close of the evidentiary hearing. Neither party provided this court with a transcript for this hearing, if it occurred.

- 3 -

1 responded (doc. 15, ex. M) and plaintiff replied (doc. 15, ex. N). Defendant's sole objection was to the inclusion of fees for a period of time when the parties were having a discovery dispute. The bankruptcy judge awarded plaintiff $101,008.50 in attorneys' fees and $7,384.83 in costs on January 24, 2012 (doc. 15, ex. Q).

**II**

Defendant raises a number of objections to the bankruptcy judge's proposed findings of fact and conclusions of law concerning the damages award, which we address in turn. First, defendant objects to the bankruptcy judge's recitation of this court's standard of review in ¶ 6 of the conclusions of law. Proposed Findings at 17. The bankruptcy judge stated that while his conclusions of law are reviewed *de novo*, his findings of fact are not set aside unless clearly erroneous. But this is not a bankruptcy appeal under 28 U.S.C. § 158, to which Rule 8013, Fed. R. Bankr. P. applies. Instead, these are objections to a recommendation under 28 U.S.C. § 157(c)(1), to which Rule 9033(d), Fed. R. Bankr. P. applies. Thus, we must conduct a *de novo* review upon the record of proposed findings to which a party has "timely and specifically objected." 28 U.S.C. § 157(c)(1); see also Fed. R. Bankr. P. 9033(d). In doing so, we must review the record. In re Castro, 919 F.2d 107, 108 (9th Cir. 1990).

**III**

Next, defendant objects to the use of George Cunningham's testimony to establish the proposed damages award. Specifically, defendant objects to consideration of Cunningham's valuation of well casings,[5] which it argues renders the bankruptcy court's proposed findings "fatally inconsistent" with its liability ruling because plaintiff presented evidence of damages beyond the value of property actually removed from the sites. Objection at 8. We disagree.

In affirming the bankruptcy judge's grant of summary judgment on the turnover claim, the district court found that the "uncontroverted facts" established that defendant evicted

---

[5] Well casing is steel pipe that is placed into an oil well. Tubing is placed inside the casing, which attaches to a pump jack that pumps oil up through the tubing. Tr. at 52:21-53:19.

- 4 -

1   plaintiff from both well sites, took property belonging to plaintiff, and locked the well sites,
2   telling plaintiff that it could not return. In re Krystal Energy, 2008 WL 4446703, at *6.
3   Because both sites were located on Navajo land and secured by defendant, any property left
4   on the sites was necessarily "in possession, custody, or control" of defendant. See 11 U.S.C.
5   § 542(a). Pursuant to § 542(a), defendant was required to deliver that property to the trustee.
6   In re Del Mission Ltd., 98 F.3d 1147, 1151 (9th Cir. 1996). In granting summary judgment
7   to plaintiff, the bankruptcy judge found that defendant's "ejectment and exclusion of
8   [plaintiff] from both sites without the opportunity to remove its equipment was found to
9   create liability for return of the property or its value." Proposed Findings at 3. The district
10  court cited this conclusion with approval. "Indeed, as the [bankruptcy judge] remarked. . .
11  'as long as it's proper you can eject someone from your property, but that doesn't mean you
12  get to keep the property that that person has brought onto the property.'" In re Krystal
13  Energy, 2008 WL 4446703, at *6. The bankruptcy judge found (and defendant has not
14  disputed) that defendant neither let plaintiff remove its equipment from the sites nor let
15  plaintiff sell the equipment in place. Proposed Findings at 18. Thus, it was proper for
16  plaintiff to present evidence of the value of property remaining at the sites, because
17  defendant was found liable for the value of any property that it did not return. See id. at 3.

**IV**

19  Defendant next objects to the bankruptcy judge's admission of the valuation reports
20  and opinions of Padilla and Cunningham and his calculation of damages at ¶ 8 of the
21  conclusions of law. Proposed Findings at 18. Defendant's objection to the admission of the
22  opinions and reports is unclear. To the extent that this is a specific objection requiring *de*
23  *novo* review, we note that defendant did not object at the hearing to either Cunningham's
24  tender as an expert, Tr. at 82:1-3, or to the admission of his report. Tr. at 93:11-15. It was
25  permissible to permit Cunningham to testify as an expert and to admit his report when there
26  was no objection. It was also reasonable to permit Padilla to testify and admit his report.
27  Padilla has been an oil equipment manufacturer since approximately 1990. He was asked by
28  plaintiff to conduct a market valuation of the equipment at the Utah and New Mexico sites

1  in 2009. The bankruptcy judge reasonably permitted Padilla to testify based on his
2  experience, and reasonably concluded that Padilla's testimony was helpful to corroborate
3  Cunningham's findings, although it was not as persuasive as an opinion of a certified
4  appraiser. The admission of Padilla's opinions and report and the assignment of weight to
5  Padilla's testimony were proper.

6  Next, defendant objects to the bankruptcy judge's calculation of damages. It argues
7  that there was no evidence presented by plaintiff to show that it had property rights in any
8  of the property located at the Utah and New Mexico sites. Specifically, defendant argues that
9  plaintiff had no rights in the well casings at either site, items to which Cunningham attributed
10 a total value of $2,900,000. According to defendant, plaintiff's failure to introduce evidence
11 of its property rights at the damages hearing means that it did not meet its burden of proof
12 for the turnover claim, and warrants entering judgment on defendant's behalf.

13 But the district court already affirmed the bankruptcy judge's ruling that found
14 defendant liable to plaintiff on the turnover claim. Indeed, the exact questions defendant
15 presented on appeal were (1) whether the bankruptcy court "erroneously determined that
16 [plaintiff's] property was in the possession, custody or control of [defendant] under 11 U.S.C.
17 § 542(a);" and (2) whether the bankruptcy court "erroneously determined that [plaintiff]
18 possessed a legal or equitable interest in the property to be turned over and accounted for."
19 In re Krystal Energy, 2008 WL 4446703, at *3. This district affirmed. Id. at *7. Moreover,
20 plaintiff's witnesses testified at the damages hearing about the equipment they personally
21 observed while plaintiff operated the sites. Bennett described the equipment he remembered
22 seeing at each site. Proposed Findings at 3-5. Padilla visited the Utah site during its
23 operation and the New Mexico site in 2009 and described the equipment he remembers. Id.
24 at 6-7. Cunningham conducted interviews to learn what items were at the Utah site, and took
25 photographs of both sites during his 2007 visits. Id. at 9-10. Finally, Nicholson testified that
26 he visited the Utah site at least thirty times and remembers seeing the equipment listed in
27 Padilla's report. Tr. at 158:17-159:7.

28 Notably, defendant introduced no evidence to establish that anyone other than plaintiff

- 6 -

1  owned the on-site equipment, or that plaintiff had no right to remove the well casings.
2  Instead, defendant now urges us to admit the Utah and New Mexico leases, which defendant
3  argues expressly provide that well casings become the defendant's property when the lease
4  terminates (doc. 11, exs. F & G). We may receive further evidence when reviewing a
5  bankruptcy judge's proposed findings. Fed. R. Bankr. P. 9033(d). Expansion of the record
6  may be appropriate in situations where evidence is newly discovered, or where a party was
7  not provided with a full and fair opportunity to present its case in bankruptcy court. But
8  these are defendant's own leases, and they are from the 1950s. And our review of the hearing
9  transcript reveals that defendant was provided with a full and fair opportunity to present
10 witnesses and evidence. For whatever reason, it chose not to admit the leases, and it chose
11 not to call witnesses to testify about whether plaintiff could remove the well casings. A post-
12 hearing change in strategy does not justify the re-opening of the record in this decade-long
13 adversary proceeding.

14  This district affirmed defendant's liability on the turnover claim in 2008. Defendant
15 introduced no evidence at the 2011 damages hearing to suggest that anyone other than
16 plaintiff owned the equipment located at the New Mexico and Utah sites. Accordingly,
17 damages were appropriately entered in plaintiff's favor, and it was appropriate to consider
18 the well casings when calculating value.

**V**

20  Next, defendant again objects to the admission of Padilla's valuation testimony and
21 to the valuation finding at ¶ 8 of the conclusions of law. Proposed Findings at 18. Although
22 defendant concedes that the bankruptcy judge did not base his conclusions solely on Padilla's
23 testimony, it argues that Padilla's testimony was irrelevant because it contemplated
24 replacement cost rather than 1999 value. We disagree.

25  The bankruptcy judge admitted Padilla's opinions and report over objection, although
26 he noted that he would later determine what weight he would give Padilla's testimony. Tr.
27 at 40:9-17. He thoughtfully considered and discussed the limitations of Padilla's valuation
28 opinion, including his lack of appraisal credentials and his utilization of current rather than

- 7 -

1999 values. The bankruptcy judge found Padilla's opinions to be credible, but noted that they did not equate to those of an experienced appraiser. He concluded that Cunningham's appraisal was supported by Padilla's extensive experience. Proposed Findings at 18. Although Padilla did not offer an opinion of 1999 value, his opinion concerning the kind and amount of equipment that would be present at both sites is consistent with the kind and amount of equipment in Cunningham's report. Based on these facts, it was reasonable to conclude that Padilla's testimony supported Cunningham's valuation.

**VI**

Defendant again objects to the admission of Cunningham's opinion. As discussed above, defendant did not object to the admission of Cunningham's testimony or report at the hearing. Defendant also objects to the bankruptcy judge's summary of Cunningham's testimony in ¶¶ 11-13 of the findings of fact. It is unclear what defendant feels was incorrect. However, we are satisfied after reviewing the transcript that the bankruptcy judge accurately summarized Cunningham's testimony.

Defendant also objects to the bankruptcy judge's reliance on Cunningham's calculation of "fair market value in continued use." Defendant argues that Cunningham's valuation is improper because it assumes that the wells would continue to operate. On cross examination, Cunningham acknowledged that the equipment would only have a "market value" if plaintiff was no longer permitted to operate the wells and was ejected from the property. Tr. at 106:1-9. Although Cunningham acknowledged that the value of removed property would be less than "market value in continued use," he testified that it would not be that much less. It would be less to the degree of transportation and installation. Tr. at 114:10-19. By contrast, defendant offered no evidence to rebut Cunningham's calculation of 1999 "fair market value in continued use," or to establish "market value." Its only witness, Donald Ross, provided a 2008 forced liquidation value of the New Mexico site. The bankruptcy judge noted that Ross had "no opinion regarding the value as of December of 1999." Proposed Findings at 14.

Next, defendant repeats its argument that there was no evidence that plaintiff had any

1  property rights in the well casings. For the reasons discussed above, we find this argument
2  unpersuasive.

3  Finally, defendant argues that plaintiff is judicially estopped from arguing that its
4  property is worth $4,000,000, because it stated on its bankruptcy schedules that the value of
5  its oil equipment was $400,000. Judicial estoppel prevents a party from asserting a position,
6  then later obtaining an advantage by taking a "clearly inconsistent position." Hamilton v.
7  State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). We may consider whether
8  the party asserting an inconsistent position "would derive an unfair advantage or impose an
9  unfair detriment on the opposing party if not estopped." Id. at 783.

10 Judicial estoppel is not applicable here. First, it is not clear that plaintiff's original
11 position as to the value of its property (made at a time when it had been denied access to the
12 sites) is clearly inconsistent with its current assertions of value. Evidence presented at the
13 hearing suggests that $400,000 - the amount that plaintiff spent in 1997 to purchase the
14 operating rights - may not reflect the property's true value in 1999.[6] Even if the positions are
15 clearly inconsistent, plaintiff would not obtain an unfair advantage if not estopped.
16 Defendant's liability in this case was caused by its own actions: it failed to return property
17 to plaintiff. It is fair to permit an aggrieved plaintiff to submit a value calculation prepared
18 by a neutral appraiser when the very damages it seeks to calculate were caused by the
19 defendant. Moreover, defendant had an opportunity to challenge plaintiff's proposed
20 valuation at the hearing.

21 The bankruptcy judge ultimately discounted Cunningham's valuation of $4,250,000
22 by $250,000 to account for the uncertainty generated by Cunningham's hypothetic valuation
23 of the Utah site. He acknowledged that this uncertainty was caused in part by the plaintiff,
24 who was unable to produce business records to confirm the exact equipment owned at each
25 site. Even assuming that market value is the correct valuation, because defendant presented

---

[6] For example, Nicholson testified that plaintiff was continually making improvements at the sites, and could have spent hundreds of thousands of dollars on replacing and improving equipment. Tr. at 145:11-147:9.

- 9 -

1 no evidence to establish 1999 market value, we cannot conclude that the market value
2 approach would have required a greater discount than that already applied by the bankruptcy
3 judge. Thus, based on our consideration of the proposed findings and our *de novo* review of
4 defendant's objections, we adopt the bankruptcy judge's proposed judgment of $4,000,000.

**VII**

6 Defendant objects to the bankruptcy judge's order awarding plaintiff its fees and costs.
7 It argues that because we must conduct a *de novo* review of the bankruptcy judge's
8 proposed judgment for the turnover claim, there is not yet a prevailing party. Accordingly,
9 defendant asks that we conduct a *de novo* review of the bankruptcy judge's award of fees and
10 costs.

11 Even under *de novo* review, however, we agree that an award of fees and costs is
12 appropriate in this case. Plaintiff argued in its motion for attorneys' fees and costs that
13 defendant's violation of the turnover requirements amounts to a violation of the automatic
14 stay, thus entitling it to fees. Plaintiff further argued that it was entitled to fees under A.R.S.
15 § 12-341.01, as this action arose out of a contract between plaintiff and defendant (doc. 15,
16 ex. H). Defendant responded, raising as its sole objection that plaintiff should not be
17 awarded fees incurred between February 2009 and October 2009 because of a discovery
18 dispute (doc. 15, ex. M). After subtracting these amounts, the bankruptcy judge awarded
19 plaintiff its fees and costs pursuant to A.R.S. §§ 12-341.01 and 12-341 and 11 U.S.C. §§
20 362(k)(1) and 105 (doc. 15, ex. Q).

21 Defendant now argues that an award of fees and costs is unavailable under either 11
22 U.S.C. § 362(k) or A.R.S. § 12-341.01. Defendant did not raise these objections in a timely
23 matter in the bankruptcy court. Based on the record, we agree with the bankruptcy judge's
24 award, which was unopposed (with the exception of plaintiff's fees incurred during the
25 discovery dispute). Moreover, although damages are only available to an individual debtor
26 under 11 U.S.C. § 362 for violation of an automatic stay, they are available under 11 U.S.C.
27 § 105(a) as a sanction. See In re Pace, 67 F.3d 187, 192-93 (9th Cir. 1995); In re Cascade
28 Roads, Inc., 34 F.3d 756, 767 (9th Cir. 1994). A violation of 11 U.S.C. § 542(a), for which

- 10 -

1 defendant has already been found liable by both the bankruptcy court and this district,
2 constitutes a violation of the automatic stay. In re Del Mission, 98 F.3d at 1151. The award
3 of fees was therefore justified under § 105(a).

4     Defendant has not objected to the amount of fees and costs. Accordingly, we award
5 plaintiff $101,008.50 in attorneys' fees and $7,384.83 in costs.

## VIII

7     **IT IS ORDERED** adopting the bankruptcy judge's proposed findings of fact and
8 conclusions of law and recommendation for a final judgment (doc. 1). **IT IS FURTHER**
9 **ORDERED** adopting the bankruptcy judge's award of attorneys' fees and costs and
10 **DENYING** defendants' objections to the award (doc. 12). **IT IS ORDERED DENYING**
11 defendant's motion for *de novo* review and independent determination as moot (doc. 9).

12     The Clerk shall enter judgment for plaintiff and against defendant in the amount of
13 $4,000,000, and shall award plaintiff $101,008.50 in attorneys' fees and $7,384.83 in costs.

14     DATED this 24th day of May, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 11 -